**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **MICHAEL A. JACKSON** | **CIVIL ACTION NO. 06-0598** |
| **VS.** | **SECTION P** |
| **WARDEN HOLIDAY, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Michael A. Jackson on April 11, 2006. Plaintiff is a detainee incarcerated at the Claiborne Parish Detention Center (CPDC), Homer, Louisiana. He complains that the defendants failed to protect him from being attacked by a fellow CPDC inmate on October 14, 2005.[1] He names CPDC Wardens Holiday, Allen, and Goodwin, along with Majors Hunter and Banks and Captain McCoy as his defendants. He prays for a transfer and for an unspecified amount of damages for pain and suffering.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED** as frivolous and for failing to state a claim upon which relief may be granted as provided by 28 U.S.C. §1915(e)(2)(B)(i) and (ii), 28 U.S.C. §1915A(b)(1) and 42 U.S.C. §1997e(c)(1).

---

[1] Plaintiff contends that the event in question occurred on October 14, 2006; the undersigned assumes that the month and day are correct and that the plaintiff's designation of the year is in error.

1

# STATEMENT OF THE CASE

In his original complaint plaintiff alleged that on or about October 14, 2005, he was a pre-trial detainee at CPDC. He was housed in a dormitory with a Louisiana Department of Public Safety and Corrections convict named Michael Lewis. On that day Lewis challenged plaintiff to fight; plaintiff declined the challenge, opting instead for a game of dominos. Lewis "snuck" him and struck him in the face with locks. Plaintiff was taken to the Claiborne Parish Hospital then transferred to the E.A. Conway Hospital in Monroe and then to the Louisiana State University Medical Center in Shreveport. Examination revealed that plaintiff's jaw was fractured. Surgery was performed and plaintiff was returned to CPDC.

Lewis was removed from the dorm and placed in lock-down where he "snuck" another inmate. Lewis was then placed "...back around [plaintiff] in another dorm."

When plaintiff's wife complained to prison officials about Lewis's placement, those officials "came down" on him. Plaintiff requested that Lewis be charged; however, he was not. Lewis threatened plaintiff's life; plaintiff advised Captain McCoy about his threat but McCoy replied that "... he didn't care if I kill him..."

Plaintiff contends that the conditions remain dangerous because he is "...still around some of [Lewis's] friends..."

According to plaintiff, prison officials knew that Lewis posed a risk to other inmates but did nothing to prevent the attack on plaintiff.

Plaintiff claims that as a result of the assault his vision, hearing, and memory have deteriorated. He claims that his mouth hurts and that since he no longer has any teeth, he cannot

eat what his fellow inmates are fed. He also complains that he has not seen a physician since November, 2005. [doc. 1-1, pp. 3-6

On January 10, 2006, plaintiff submitted an Administrative Remedies Procedure (ARP) grievance to the CPDC administration. He provided a description of the assault and complained that notwithstanding his request to Warden Allen, no charges had been filed against Lewis. [doc. 1-1, p. 7]

On July 18, 2006, the undersigned directed plaintiff to amend his complaint and to provide additional facts and argument in support of his claim; plaintiff was also directed to clarify whether or not he properly exhausted administrative remedies prior to filing his complaint. [doc. 6]

On August 1, 2006, plaintiff filed a Motion for Stay claiming, "... plaintiff seeks to exhaust administrative remedies as required by 42 U.S.C. §1997e. Plaintiff was not able to exhaust remedies through no fault of his own due to administrations refusal to answer at Claiborne Parish Detention Center..." Plaintiff then moved to stay all proceedings pending exhaustion of remedies. [doc. 7] On August 2, 2006, this Motion was denied.

On August 18, 2006, plaintiff filed an Amended Complaint. Therein plaintiff complained that Warden Holiday "...was aware of housing over 130 inmates in a 80 bed pre-trial detainee dorm creating risk of harm to plaintiff where numerous fights occur due to overcrowding..." [doc. 8, p. 1]

He claimed that Warden Goodwin "... knew of the unsafe conditions due to overcrowding..." [id., p. 2]

He claimed that Major Hunter "... was informed that Michael Lewis threatened plaintiff

but Major Hunter did nothing to prevent the incident ... deliberately ignoring cry out for resolution to threats made by Lewis against plaintiff..." Plaintiff claimed that he "... informed Major Hunter days prior to the incident Oct. 6, 2005." [id.]

Plaintiff claimed that Major Banks "... knew of inhumane conditions where inmates were sleeping on floor, in over crowded dorm and he was also [aware] of threats made by Michael Lewis against plaintiff..." [id.]

Plaintiff claimed that Captain McCoy "... was notified of Michael Lewis' threats and Captain McCoy stated, 'he didn't care if I kill him.'" He implies that this statement was made in October 2005 prior to the incident. [id., p. 3]

Finally, plaintiff claimed that Major Allen "... was on the staff at that time and was aware of inhumane conditions of overcrowding and inmates sleeping on the floor and did nothing to remedy the risks..."

With regard to the exhaustion of administrative remedies issue, plaintiff claimed that he was attacked on October $9^2$, 2005, and placed in lock-down where he did not have access to writing material to file his complaint. He claimed that he was released from lock-down on November 1, 2005 and claimed that he filed a complaint which was not answered. He claims that he filed a second grievance on January 10, 2006 and that this grievance was also not answered. [doc. 8, p. 3]

## LAW AND ANALYSIS

*1. Frivolity Review*

---

[2] This statement is contrary to the petitioner's original complaint which states that he was attacked on October **14th.**

When a prisoner[3] sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

---

[3] The term "prisoner" as used in both 28 U.S.C. §1915 and 28 U.S.C. §1915A means "... any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. §1915(h), 28 U.S.C. §1915A(c). Plaintiff was a pre-trial detainee when the events complained of occurred; initial review under the provisions of these statutes is therefore appropriate.

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). In addition, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint and his amended complaint have been reviewed; plaintiff has been afforded an opportunity to amend his complaint to provide additional facts; however, plaintiff's amended complaint sheds little light with respect to his claims for relief.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

## 2. Deliberate Indifference

Plaintiff faults the defendants for failing to protect him from LDOC inmate Michael Lewis. The law in this area is well settled. Jail "officials have a [constitutional] duty ... to protect inmates from violence at the hands of other prisoners." *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir.1995); see also *Johnston v. Lucas*, 786 F.2d 1254, 1258 (5th Cir.1986). However, detainees and convicts look to different constitutional provisions for their respective rights to appropriate medical care and safety. The constitutional rights of convicted prisoners are based on the Eighth Amendment's prohibition against cruel and unusual punishment. The constitutional rights of pre-trial detainees, such as the plaintiff, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*,

74 F.3d 633, 639 (5th Cir.1996). A pretrial detainee is a person who has been charged with a crime but has not yet been tried. *Bell v. Wolfish*, 441 U.S. 520, 523, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). As such, he is presumed innocent and therefore cannot be punished. *Bell*, 441 U.S. at 535 and, 537 n. 16. A detainee's due process rights are substantially equivalent to the Eighth Amendment protections available to a convicted prisoner. *Hare,* 74 F.3d at 639.

To establish a §1983 failure to protect claim, plaintiff must show that he was detained or incarcerated "... under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir.1995).

Prison officials are not subject to liability under §1983 for acts or omissions of their subordinates on the basis of *respondeat superior*. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir.1992). Prison officials may be found liable in their individual capacities for denying humane conditions of confinement to the inmates in their charge, but only if it is shown that they were aware of facts from which the inference could be drawn that a substantial risk of harm existed, and, that the official actually drew the inference. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ; *Downey v. Denton County*, 119 F.3d 381, 385 (5th Cir.1997).

The defendants may be held liable for episodic acts or omissions only if it can be shown that they had actual subjective knowledge of a substantial risk of harm to their detainee, but responded with deliberate indifference to that risk. *Hare*, 74 F.3d at 650; *Payne v. Collins*, 986 F.Supp. 1036, 1952 (E.D.Tex.1997).

Plaintiff clearly makes no such showing with regard Wardens Holiday, Allen, and

7

Goodwin. At best, plaintiff has shown only that the Wardens (Holiday, Allen, and Goodwin) were aware of overcrowded conditions.

Plaintiff's right to protection from violence is measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under that standard, a prison official is not liable for failing to protect an inmate or detainee unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to prevail plaintiff must establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and, (2) actually drew the inference. *Farmer*, 511 U.S. at 837. Negligent inaction can never be the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835; *Hare*, 74 F.3d at 642. The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983), the Court approved the following definition of wanton – " 'Wanton means reckless-without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' 30 *American and English Encyclopedia of Law* 2-4 (2d ed. 905) (footnotes omitted)." Thus, "'[i]t is obduracy and

8

wantonness, not inadvertence or error in good faith,'" that characterize deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)(citing *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

Nothing in plaintiff's complaint suggests that these supervisory defendants were guilty of wanton conduct amounting to deliberate indifference. Nothing suggests that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Even assuming that the defendants were aware of such facts, nothing suggests that they actually drew such an inference. In other words, plaintiff has only shown that the Wardens were aware of over-crowded conditions. He has not shown that they could have deduced from that fact that a serious risk of harm existed at the hands of Michael Lewis.

As shown above, plaintiff's complaint, construed liberally, alleges at best negligence on the part of these defendants. However, in order to state a viable claim under §1983, "a plaintiff must ... prove that the alleged constitutional deprivation was <u>not</u> the result of <u>mere negligence</u>." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) since "[t]he negligent deprivation of life, liberty or property is not a constitutional violation." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir.1995). Since plaintiff has, at best, shown only negligence on the part of the supervisory defendants, his failure to protect claim against Wardens Holiday, Allen, and Goodwin must be dismissed as frivolous.

His claims against Majors Hunter and Banks and Captain McCoy fare no better. In his original complaint, plaintiff alleged, "... before this incident happen[ed], prison officials knew of this, but deliberate[ly] disregarded and ignored the warning..." [doc. 1-1, p. 3] In the Memorandum Order of July 18, 2006, it was noted, "Plaintiff has failed to allege facts supportive

9

of his allegations that the defendants had the requisite knowledge of a substantial risk or that they were 'deliberately indifferent' to the risk of harm with regard to the assault in question." [doc. 6, p. 5] In response to the Memorandum Order, plaintiff provided only additional conclusory allegations to establish that Hunter, Banks, and McCoy had knowledge that a substantial risk existed prior to the October 2005 incident. Plaintiff alleged, "Major Hunter was informed that Michael Lewis threatened plaintiff but Major Hunter did nothing to prevent the incident... Plaintiff informed Major Hunter <u>days</u> prior to incident..." [doc. 8, pp. 2-4] Plaintiff now claims to have told Hunter about threats he received from Lewis days before the incident in question; however, on the day of the incident, plaintiff claims that he was challenged to a fight. Plaintiff himself apparently disregarded this challenge and threat and opted instead to engage in a game of dominos without complaint to any corrections official.

Plaintiff also alleged that Major Banks "... was also [aware] of threats made by Michael Lewis against plaintiff ... [but] did nothing to prevent [a]ccelerated tension..." [doc. 8, pp. 2-4] However, plaintiff does not allege how Banks became aware of the alleged threats. The allegation is thus conclusory and insufficient to warrant the imposition of liability on this defendant.

Finally, he alleged, "Captain McCoy was notified of Michael Lewis' threats and ... stated, 'he didn't care if I kill him.'" [doc. 8, pp. 2-4] However, the chronology provided in the original complaint suggests that this conversation occurred <u>after</u> Lewis assaulted plaintiff. [doc. 1-1, p. 4]

In short, plaintiff's allegations of fault with respect to Hunter, Banks, and McCoy are conclusory at best. He claims to have personally advised Major Hunter about Lewis's threats days before the incident; nevertheless, on the very day when Lewis challenged plaintiff to fight,

10

plaintiff merely withdrew to a game of dominos, apparently telling no one of the threat. If plaintiff himself did not foresee the threat of attack, he surely cannot fault the defendants for their failure to foresee the attack.

Finally, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. at 834. An inmate or a detainee must demonstrate both that (1) "he is incarcerated under conditions posing a substantial risk of serious harm" and (2) the defendant prison official's state of mind is one of "deliberate indifference" to the prisoner's safety. *Id.*; *Horton v. Cockrell*, 70 F.3d at 401. "Prison officials are not, however, expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir.2003). Plaintiff has not shown that any of the defendants possessed the requisite state of mind necessary to prevail on his failure to protect claim. It should be dismissed.

### 3. Exhaustion of Administrative Remedies

Finally, plaintiff's allegations concerning exhaustion of available administrative remedies are ambiguous or contradictory at best. Along with his original complaint, he provided a copy of a grievance he claimed to have filed on January 10, 2006, almost three months after the event complained of. [doc. 1-1, p. 7] Further, in his complaint he alleged only that he had filed the January 10 grievance. [doc. 1-1, paragraph II] The grievance does not suggest that any of the defendants were aware of any risk of harm to the plaintiff prior to the assault. Further, the grievance does not request compensation for injuries sustained in the attack; instead, it merely requested that charges be filed against the assailant. [doc. 1-1, p. 7]

In his motion for a stay filed on August 1, 2006, plaintiff candidly admitted that he failed

to properly exhaust administrative remedies [doc. 7]; however, in his amended complaint filed on August 18, he claimed that he had filed another grievance on November 1, 2005. [doc. 8, p. 3]

The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e(a), which makes the exhaustion requirement mandatory in prison conditions cases, provides as follows:

> (a) Applicability of Administrative Remedies – <u>No action shall be brought</u> with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>. (Emphasis supplied)

Under current law, plaintiff must exhaust the administrative remedy procedure before proceeding herein. The statute provides for no exceptions. The jurisprudence interpreting the statute clearly mandates completion of the administrative remedies process **prior** to filing suit. See *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998) (§1997e(a) "plainly requires that administrative remedies be exhausted <u>before</u> the filing of a §1983 suit, rather than while the action is pending ... [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); See also *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled – that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.")

12

It is therefore highly unlikely that plaintiff fully exhausted his present claims for relief.

*4. Conclusion*

Nevertheless, since it is apparent that plaintiff's claims are frivolous, dismissal on that basis is recommended. Should plaintiff object to this Report and Recommendation as provided below, he should include with his objection proof that he fully exhausted administrative remedies <u>prior</u> to filing suit.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 11th day of September, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE